STATE OF MAINE                    SUPERIOR COURT
PENOBSCOT, SS.                    CIVIL ACTION
                                 Docket No. AP-05-19

                                 JCH -⌐ ⌐3|5|⌐    ┌─────────────────────┐
                                                   │  FILED & ENTERED    │
                                                   │  SUPERIOR COURT     │
CMC and Maintenance, Inc.,                         │                     │
        Plaintiff                                  │    AUG 18 2006      │
                                                   │                     │
                                                   │ PENOBSCOT COUNTY    │
        v.                       Order on Appeal   └─────────────────────┘


City of Bangor,
        Defendant


        Pursuant to M.R.Civ.P. 80B,[1] CMC and Maintenance, Inc. (CMC) appeals from a

decision issued by the City of Bangor City Council rejecting its bid for a custodial service

contract and instead awarding that contract to River City Commercial Cleaning. The

court has considered the parties' submissions on this appeal.

        CMC contends that the Council's decision awarding the contract to River City

should be vacated because, it urges, two of the Council members who voted on the

matter, Susan Hawes and Daniel Tremble, had a conflict of interest favorable to River

City. A claim of administrative bias may be pursued either on the basis of the record of

the administrative proceeding, as CMC has done here. However, when the factual basis

of the bias claim rests on information extrinsic to the administrative record, the challenge

must be developed by means of a trial of the facts in Superior Court pursuant to

M.R.Civ.P. 80B(d). *See also Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743

A.2d 237, 240-41. Because CMC has not sought a trial of the facts, the resulting question

is whether, as a matter of law, the record compelled the conclusion that the two Council

───────────────────────────

[1] The record submitted by the parties does not appear to include a provision of the City's
ordinances that creates a right of appeal in this case to the Superior Court. Rule 80B
itself does not create such a right, because it establishes the procedure for an
administrative appeal when the right to such an appeal is established independently. *Cf.
Hodsdon v. Town of Hermon*, 2000 ME 181, ¶ 3, 760 A.2d 221, 222 (appeal from
decision of municipal planning board are authorized only if appellate rights are created
by municipal ordinance). Nonetheless, the issue of appellate jurisdiction has not been
raised, and so the court proceeds here with the assumption that such jurisdiction exists.

1

members were disqualified from participation in the Council's award decision for the reason urged here by CMC, namely, the conflict of interest provisions of the City's ordinance.[2]

The record establishes that Tremble owns a business for whom the owner of River City performs accounting work and that Hawes, as she put it, has a similar relationship with River City's owner. Tremble and Hawes disclosed this circumstance to the Council during the meeting when it considered the custodial contract but prior to any substantive discussion or consideration of the matter. Tremble was also a member of the City's Finance Committee, which is a subcommittee of the Council itself. Prior to the Council's consideration of the contract award, the Finance Committee deliberated on the matter and recommended to the Council that the contract be awarded to River City, despite the staff's position that it should be awarded to CMC. Tremble participated in the Finance Committee's consideration of the issue, as did Hawes, although Hawes did not vote at the Finance Committee proceeding because she is not a member of that body. Neither Hawes nor Tremble disclosed their connection to River City at the time of the Finance Committee hearing because, as Tremble later noted at the full Council meeting, he did not realize then that there was even the question of a conflict.

After Hawes and Tremble made their disclosures at the Council meeting and after the Council members elicited the view of the City's attorney, the remaining Council members voted unanimously that, under the conflict provisions of the City's ordinance, Hawes and Tremble were not disqualified from participating in the Council's consideration of the custodial services contract. That decision triggered the legislative obligations imposed on Hawes and Tremble to participate fully in the subsequent proceedings affecting the contract award. As he did at the Finance Committee level, Tremble voted in favor of awarding the contract to River City, and Hawes – now voting on the issue for the first time – did likewise. On this appeal, it is the Council's decision that Hawes and Tremble were not disqualified under the ordinance that is at issue. The court reviews that decision for any error of law, abuse of discretion or issuance of

---

[2] In its complaint, CMC alleges that the contract awarded to River City is invalid because several provisions of state law barred Hawes and Tremble from participating in the Council's deliberations and voting. In its brief on appeal, CMC relies only on the conflict of interest provisions of the City's own ordinances.

2

findings not supported by substantial evidence in the record. *See Peregrine Developers, LLC v. Town of Orono*, 2004 ME 95, ¶ 8, 854 A.2d 216, 219.

In two provisions, the City's ordinance defines the circumstances where a councilor is disqualified from participating in administrative matters. In other words, those circumstances set out in the ordinance establish the existence of a conflict of interest that bar a subject councilor from acting on or otherwise becoming involved in the matter. In pertinent part, the first such section provides:

> No. . .City Councilor. . .shall participate directly, by means of deliberations, approval or disapproval or recommendation, in the purchase of goods or services for the City and the award of any contracts with the City. . .where to his or her knowledge there is a financial interest, or special interest other than that possessed by the public generally, in such purchase or award held by:
>
> (1)     That individual. . .;
>
> (2)     A business in which that individual. . .serves as an officer, director, trustee, partner or employee in a supervisory or management position; or
>
> (3)     Any other person or business with whom or with which that individual . . .is in business. . . .

City of Bangor, Maine, Code of Ethics, § 33-6(A). To the extent relevant to this case, the ordinance defines a "financial interest," which a phrase used in section 33-6(A), as "[a] direct or indirect interest having monetary or pecuniary value, including but not limited to the ownership of shares of stock." *Id.*, § 33-2. Here, the record supports the conclusion that Hawes, Tremble and their businesses[3] did not have a "financial interest" in River City. For a "financial interest" to exist, Hawes or Tremble would need to have a "direct or indirect [financial] interest" in River City, or such a relationship would have to exist between River City and a business for which the councilor serves in one of the capacities specified in section 33-6(A)(2). None of those circumstances exist. Rather, the owner of River City simply performs accounting work for Tremble's business and for either Hawes

---

[3] As is noted in the text, the record is not entirely clear whether Hawes herself did business with the accounting firm conducted by River City's owner or whether she is affiliated with a business that has such a relationship with the accounting firm. Any such ambiguity in the record is not material to the dispositive analysis on this appeal.

or her business. Such a relationship does not rise to the level of one that can be described as a "financial interest" within the meaning of the ordinance.

Additionally, under section 33-6(A), Hawes or Tremble would be deemed to have a conflict of interest in the custodial services contract decision if either of them (or a business with which they were affiliated) had a "special interest" in the outcome of the decision. The ordinance defines "special interest" as

> [a] direct or indirect interest having value peculiar to a certain individual. . . whether economic or otherwise, which value may accrue to such individual or group as a result of the passage of any order. . .or the approval or disapproval thereof by the City Council, board or commission and which interest is not shared by the general public.

City of Bangor, Maine, Code of Ethics, § 33-2. The record did not compel the City Council to conclude that, merely because the River City owner also performed accounting services for Tremble's business and for Hawes (either individually or for a business that is connected to her), either of them had a "special interest" in the contract award decision. The record does not suggest that they had a value-based interest of any kind that they would realize as a result of the Council's ultimate decisions to award the contract to River city and to not award it to CMC. Instead, Tremble and Hawes (either themselves or a business interest) had only a professional relationship with the owner of River City for the provision of services unrelated to those that River City itself offered to the City. In determining whether Hawes and Tremble were disqualified from participating in the Council's consideration of the contract award, the nature of that relationship did not require the Council to find that either one of them (or, again, any affiliated business) stood to gain because of River City's candidacy for the contract.

CMC also contends on this appeal that Hawes and Tremble breached the disclosure responsibilities created by section 33-11(B) of the City's Code of Ethics. That provision requires a City councilor or board member to disclose the existence of a potential conflict of interest when that municipal official "believes that he or she. . .has a financial or special interest. . .in any agenda item before his or her collective body. . . ." Here, the record reveals that Hawes and Tremble disclosed their business relationship with the River City owner at the first opportunity (that is, when the service contract issue came up on the agenda at the June 13, 2005, City Council meeting) after the issue was

4

brought to their attention. There is nothing in the record to suggest that at the time of the Finance Committee meeting, either believed that there might be a conflict that would trigger the disclosure obligation. Further, the nature of their relationship with the River City owner is sufficiently attenuated from the custodial service contract decision that one would not reasonably expect the issue to come to mind. Thus, from the limited record associated with this appeal, the record does not compel a conclusion that either Hawes or Tremble violated section 33-11(B).[4]

        The entry shall be:

        For the foregoing reasons, the decision of the City of Bangor City Council is affirmed.

Dated: August 15, 2006

_____
Justice, Maine Superior Court

---

[4] At the June 2005 City Council meeting which resulted in the contract award challenged here, CMC was represented by counsel. CMC did not challenge the composition of the City Council and, more particularly, did not raise any question about whether Hawes and Tremble complied with the disclosure requirement. The court nonetheless addresses CMC's substantive claim here, assuming – without deciding – that CMC has preserved the issue for appellate consideration.

5

Date Filed __7/5/05__ __PENOBSCOT__ Docket No. __AP-2005-19__
County

Action __RULE 80(B) APPEAL__

**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

CMC AND MAINTENANCE, INC. vs. INHABITANTS OF THE CITY OF BANGOR

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| STEVEN J. LYMAN, ESQ.<br>96 HARLOW STREET<br>BANGOR, ME. 04401 | JOHN HAMER ESQ<br>BANGOR CITY HALL<br>73 HARLOW ST<br>BANGOR ME 04401 |

| Date of Entry | |
|---|---|
| 7/5/05 | Civil Complaint Pursuant to Rule 80(B) Maine Rules of Civil Procedure filed. |
| 7/7/05 | Notice and Briefing Schedule 80B Appeal of Governmental Actions filed. Copy forwarded to Plaintiff's attorney. |
| 7/21/05 | Acceptance of Service by John Hamer, Esq., Assist. City Solicitor o/b/o Defendant on 7/14/05. |
| 8/8/05 | Request for Extension of Time to File Plaintiff's Brief and Designate Record filed by plaintiff, together with a proposed order. |
| 8/15/05 | Motion for Extension of Time to File Plaintiff's Brief and Designate Record filed. The request is hereby granted and the Plaintiff's date for filing Brief and Record is August 29, 2005 and date for filing Defendant's Reply is September 29, 2005. Copy forwarded to attorney for Plaintiff and to John Hamer, Esq. for Defendant. |
| 8/30/05 | Plaintiff's Brief in Support of Rule 80B Complaint Filed. |
| 8/30/05 | Parties Joint Designation of Record Filed by Plaintiff. |
| 9/14/05 | Parties Joint Motion to Amend the Record filed. |
| 9/14/05 | Amended Joint Record filed. |
| 9/14/05 | Copy of Notice and Briefing Schedule forwarded to John Hamer, Esq. |
| 9/20/05 | Defendant's Brief filed. |
| 10/5/05 | Court's ruling on Parties' Joint Motion to Amend Record filed- The parties' Joint Motion to Amend the Record is approved. Record amended as requested. (Hjelm, J.) Copy forwarded to attorneys of record. |
| 12/1/05 | File presented to Justice Hjelm for review. |